# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO
_____

BENJAMIN CANDELARIA,

     Plaintiff,

vs.                             No.CIV 97-0367 BB/WWD

KENNETH S. APFEL,[1]
COMMISSIONER OF SOCIAL SECURITY,

     Defendant.

### MAGISTRATE JUDGE'S PROPOSED FINDINGS
### AND RECOMMENDED DISPOSITION
#### Proposed Findings

    1.   This matter comes before the Court upon plaintiff's Motion to Reverse and Remand the Administrative Agency Decision, filed December 4, 1997 [7-1].   The Commissioner denied plaintiff's request for Supplemental Security Income ("SSI") benefits both initially and upon reconsideration.  Plaintiff is currently 42 years old, and alleges a disability which commenced March 15, 1994, due to a mental impairment, specifically a personality disorder, as well as substance addiction (drug and alcohol) which is in remission.  Mr. Candelaria finished tenth grade. His past relevant work includes work as a shuttle driver, stock person and dishwasher.

    2.   After conducting an administrative hearing, the Commissioner's Administrative Law Judge ("ALJ") denied the applications, concluding that plaintiff's subjective complaints were not

----

[1]  President Clinton appointed Kenneth S. Apfel Commissioner of Social Security as of August 29, 1997.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Kenneth S. Apfel should be substituted as defendant for Acting Commissioner John J.Callahan, who was the appropriate party at the time of the underlying decision.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

credible, that his impairments do not prevent him from performing his past relevant work as dishwasher, janitor or doing furniture delivery.  The Appeals Council denied plaintiff's request for review of the ALJ's decision, thus the ALJ's decision is the final decision of the Commissioner. Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g).

3.   The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence.  Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993)(citations omitted).  Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests.  Id. (citation omitted).

4.   Plaintiff raises the following allegations of error: (1) the ALJ erred in his analysis under the Listings for Mental Disabilities at §§ 12.04 and 12.08; (2) the ALJ erred in determining that plaintiff could perform past relevant work; and (3) the ALJ erred in considering past drug and alcohol abuse.

5.   "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity."  Thompson at 1486; 42 U.S.C. § 1382c(a)(3)(A).  Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications.  Id.; see 20 C.F.R. § 416.920. The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled.  Id. (citations omitted).

6.   At the first four levels of the evaluation, the claimant must show:  (1) that he  is not working; (2) that he has an impairment or combination of impairments severe enough to limit the

ability to do basic work activities; (3) that the impairment meets or equals one of the listing of impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1; or (4) that he is unable to perform work done in the past.  At the fifth step, the Commissioner must produce evidence regarding the claimant's ability to perform other work.  Reyes v. Bowen, 845 F.2d 242, 243 (10th Cir. 1988).  The third and fourth steps are at issue here.

7.  Plaintiff, who was 40 years of age at the time of the hearing, lives at home with his mother in a converted garage attached to her house.  He testified that his mother does a large part of the cooking and most of the shopping.  Tr. at 348.  Not surprisingly, plaintiff complains of low self-esteem.  Tr. at 349.  In responding to questions by his attorney, Mr. Candelaria admitted that he isolates himself, stays home most of the time, and has been known to walk out of stores because he couldn't handle the crowds.  Id.

8.  Plaintiff has a long history of heavy drug and alcohol abuse,[2] and a possible diagnosis of Hepatitis C which, he claims, leaves him fatigued.  He last worked about a year and a half prior to the hearing, driving an airport shuttle bus and working in a school cafeteria.  Tr. at 338-39. He told the ALJ that although he felt he was capable of work as a dishwasher, he didn't think he could keep a job because of "emotional problems."  Tr. at 341.  He states that his anxieties makes him feel "angry and stressed out," that he has no patience or self-control and that his ability to concentrate is "not that good."  Tr. at 346.

_____

[2]  Plaintiff states that this abuse ended around 1985.  Tr. at 114, 356.  He states that he has used LSD over 2000 times, and has also abused crystal amphetamines, cocaine and marijuana. However, an outpatient treatment note dated July 1993 from UNM Mental Health Programs reports that he admitted to using alcohol "recently" and that he has been able to maintain sobriety from 6 months to a year.  Tr. at 145.  Also, Dr. Balcazar's report states that plaintiff's drinking was regular until around March 1994, and that he used drugs until 1992.  Tr. at 110 - 11.

3

9.   For the hearing, the ALJ had called in both a psychiatrist, Dr. Carole Barry, and a vocational expert, Ms. Janet Toney.  At the time of the hearing, plaintiff was continuing mental health treatment at the Bernalillo Mental Health Center and on medication which also helped his problems with insomnia.[3]  Tr. at 351.  Mr. Ted Cramer, his caseworker, made monthly home checks.  Plaintiff was not participating in any rehabilitative efforts to return to work, but basically "trying to survive."  Tr. at 350.  Although Mr. Candelaria has trouble writing and had help from his mother in filling out the disability request forms, Tr. at 345, he can read a newspaper and can make change.  Tr. at 337.  He spends most of his day walking his mother's dog and going to church.  Tr. at 355.

**First Alleged Error**

10.   Plaintiff claims that the ALJ erred in his analysis under the Listings for Mental Disabilities at §§ 12.04 and 12.08.  The ALJ found that he did not meet a listed impairment because his functional limitations were insufficient to meet the "B" criteria.[4]  Plaintiff contends

---

[3]  He takes Amoxapin and Serax, antidepressant and antianxiety agents, as well as Benadryl and Valium. Tr. at 120.  Reports of plaintiff's insomnia are inconsistent.  For example, an outpatient note dated December 1994 has patient reporting that he sleeps "pretty good," about 7 hours a night.  Tr. at 125. In another treatment session in June 1995, plaintiff reported sleeping only 3 or 4 hours.  Tr. at 218.

[4]  For both § 12.04 and § 12.08 (affective disorders and personality disorders, respectively), the regulations require that in addition to meeting "A" criteria for the impairment, claimant also meet the "B" criteria, which are at least two of the following:
    1. marked restriction of activities of daily living; or
    2. marked difficulties in maintaining social functioning; or
    3. deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner; or
    4. repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms.

that the evidence supports a finding that he meets this criteria. As allowed under the regulations, the ALJ completed a Psychiatric Review Technique Form ("PRTF") based on his review of the evidence. <u>Andrade v. Sec'y of Health & Hum. Serv.</u>, 985 F.2d 1045, 1049 (10th Cir. 1993) (at hearing level, ALJ may complete PRTF without assistance of medical or mental health advisor).

11. The ALJ was clearly correct in his finding that plaintiff had a severe mental impairment. The record is replete with outpatient treatment records from UNM Mental Health Programs, from May 1995 to February 1995 (<u>Tr. 118 - 155</u>) and from March to September of 1995 (<u>Tr. 214 - 230</u>). These notes present a picture of an individual with a schizoaffective disorder, showing major depression and anxiety, some past suicidal ideation and psychotic symptoms such as paranoid thoughts.[5] <u>See</u>, <u>e.g.</u>, <u>Tr. at 125</u>. Plaintiff's episodes of visual and auditory hallucinations were associated with the periods during which he experienced delirium tremens. <u>Tr. at 112</u>.

12. Plaintiff urges for a conclusion that, although the ALJ did not specifically conclude whether he met the "A" criteria, he nevertheless meets them. However, such a conclusion is unnecessary given that the "B" criteria need to be met in order to be considered disabled. I thus limit my inquiry to the ALJ's findings regarding the "B" criteria.

13. The records reflect that plaintiff's treatment course was long and arduous, involving adjustments to plaintiff's medications before a benefit was achieved, and frequent counseling sessions directed at helping plaintiff become goal-oriented. The records do indicate a slow progress and some improvement.

---

[5] Based on a review of the record, the ALJ rejected Dr. Barry's opinion that plaintiff did not have a severe mental impairment. <u>Tr. at 18, 344</u>.

14.   For example, sometime in 1995, Mr. Candelaria started to become more involved in church activities, e.g., choir.  Tr. at 218, 219.   At some sessions, plaintiff expressed an interest in working and expressed no psychotic symptoms.  Tr. at 129, 131. 132.  In later sessions, he was not so interested in working, either by volunteering or for pay.   The ALJ noted that his caseworker, Mr. Cramer, reported in June 1995 that plaintiff was "disinclined to go to work as long as he [is] receiving a check."  Tr. at 218.   The ALJ based his decision in part on these records.  Tr. at 18.

15.   The ALJ also reviewed findings of Dr. Balcazar's psychiatric consult as well as a neuropsychological consult performed by Dr. Kodituwakku, a clinical neuropsychologist.  Dr. Balcazar found that Mr. Candelaria's concentration was adequate, that he displayed adequate judgment to plan a simple work sequence, and that he was feeling better with medication.  Tr. at 110-113.  The doctor also opined that plaintiff's thinking was "straight" and "goal-oriented," without delusional thinking.  Tr. at 112.  He did, however, note that there would be difficulty interacting with co-workers based on his history of anti-social behavior.

16.   Dr. Kodituwakku found deficits existing in plaintiff's concentration and attention, difficulty with reading and writing, but verbal abstraction within normal limits.  Tr. at 116.  Plaintiff showed cognitive deficits across the board.  Manual dexterity was impaired.  Although the doctor acknowledged plaintiff's reports of severe emotional difficulties, he noted that he had a "tendency to over-report his psychopathology."  Id.

17.   The ALJ reviewed these findings and completed the PRTF accordingly.  The only functional limitation which would have supported a more severe evaluation was for "restriction of activities of daily living."   Here, the ALJ checked "slight" when the evidence would have easily

6

supported a finding of "moderate." However, this does not effect the validity of his findings, since a "marked" limitation is necessary to meet "B" criteria for this function.[6] Thus, I find that the completed PRTF accurately reflects the medical evidence, and that the ALJ's conclusion that the plaintiff does not meet the "B" criteria for a listed impairment is based on substantial evidence.

**Second Alleged Error**

18.   Next, plaintiff contends that the ALJ erred in determining that plaintiff could perform past relevant work. As in step five, a step four inquiry looks into whether a claimant has the ability to do a full range of work on daily basis. While the claimant retains the burden of showing that he is disabled at step four, the ALJ has a duty "of inquiry and factual development." Winfrey v. Chater, 92 F.3d 1017 (10th Cir. 1996); SSR 82-62. The ALJ must obtain adequate "factual information about those work demands which have a bearing on the medically established limitations." Id.

19.   Contrary to plaintiff's assertions, vocational testimony is not required at this stage of inquiry. What is important is that the ALJ consider plaintiff's past relevant work as a janitor, guard and dishwasher before making a determination on plaintiff's ability to perform these jobs. Due to the ALJ's determination that claimant could return to his former work activities, he was under no obligation to seek additional information from a vocational expert. Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994); see also Winfrey v. Chater, 92 F.3d 1017 (10th Cir. 1996) ("[t]his practice of delegating to a VE many of the ALJ's fact finding responsibilities at step four appears to be of increasing prevalence and is to be discouraged").

---

[6]   "Marked" means more than "moderate," but less than "extreme." Cruse v. U.S. Dep't of Health & Hum. Serv., 49 F.3d 614, 617 (10th Cir. 1995).

20.   Plaintiff also contends that the hypothetical questions asked of the VE did not include the limitations or impairments accepted by the ALJ in his findings.  I find this claim meritless.  The ALJ presented three hypotheticals based on the PRTF as well as assessments of plaintiff's physical and mental residual functional capacity.  The hypotheticals did take mental impairments into account, each one adding layers of impairments to the picture.  The VE did, however, eliminate the guard duty because of problems in plaintiff's attention span, leaving jobs as janitor and dishwasher which plaintiff could perform.  Tr. at 36.  Therefore, I find that the hypotheticals presented to the VE accurately reflect the limitations, both physical and mental, found to exist by the ALJ.  Further, testimony elicited by the ALJ at the hearing was specifically directed at plaintiff's past work experiences and their descriptions.

21.   Although he was not required to, the ALJ nevertheless enlisted the aid of a VE for her help in determining whether the plaintiff's impairments, *both physical and mental*, precluded him from performing past work.  Tr. at 358 - 60.  Thus, the ALJ conducted a step four inquiry according to proper legal standards.

22.   At one point, plaintiff was interested in volunteer work when his caseworker recommended work as way to increase his self-esteem.  Tr. at 125.  At another, he just didn't feel able to work.  Tr. at 126.   Yet, even though plaintiff didn't feel like he was able to work, he admitted that his caseworkers and treating physicians all felt that he could work.  Tr. at 351.   In addition, none of the reasons plaintiff gave for leaving his jobs was due to a severe mental impairment.  Tr. at 340, 353, 354, 355.[7]

_____

[7]  For example, plaintiff was let go from his job as janitor because they ran out of work; a delivery job because it was temporary; and a clerk job at an antique store when his boss replaced him with his nephew.

8

23.     In his decision, the ALJ gave reasons underlying his conclusions that plaintiff could perform medium work with moderate limitations.  Tr. at 19.   It is unnecessary for the ALJ to cite to every piece of evidence as long as he considers all of the evidence.  Vincent ex rel. Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984), cited in Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996).   If the written decision does not reflect all the evidence the ALJ considered, it nonetheless reflects findings based on substantial evidence, particularly in light of questions asked and information obtained by the ALJ at the hearing.

24.   Part of the ALJ's conclusion rested on a finding of noncredibility as to plaintiff's symptoms.  The ALJ thought that plaintiff's inability to work was more a matter of disinclination than disability.  Tr. at 19.  Given the objective evidence upon which the ALJ relied, this determination was not in error.  See Eggleston v. Bowen, 851 F.2d 1244, 1247 (10th Cir. 1988) (a determination that plaintiff was not credible because his testimony conflicted with the medical records is a recognized basis for discounting that testimony).[8]

**Third Alleged Error**

25.   Last, plaintiff contends that the ALJ erred in considering past drug and alcohol abuse. I need not address this matter in light of the new rules pertaining to alcohol and drug abuse. Plaintiff's argument is misplaced because under the new rule, the ALJ is required to look at a claimant's substance abuse in order to determine in the first place whether it is a contributing factor.

26.   On March 29, 1996, Congress enacted an amendment to the Social Security Act

---

[8]  The ALJ's credibility determination is not at issue in plaintiff's brief.  However, I mention it as a means of reviewing the integrity of the ALJ's decision regarding plaintiff's residual functional capacity.

which provides that "an individual shall not be considered to be disabled . . . if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." P.L. 104-121 §§105(a)(1) & (b)(1), amending U.S.C. §§ 423(d)(2) & 1382(c).[9]

27.   Alcoholism is not considered to be a contributing factor material to the determination of disability only when the remaining limitations *by themselves* are disabling, i.e., when they are "independent" of the alcoholism. § 404.1535(a)(2)(ii).   Since my findings indicate that the ALJ was correct in concluding that plaintiff's impairments in themselves are not disabling, any effect his addictions had on his impairments would necessarily be found to be contributing factors and therefore preclude him from benefits under the new regulations. §404.1535(a)(2)(i).

28.   In sum, I find that (1) the ALJ did not err in his analysis under the Listings for Mental Disabilities at §§ 12.04 and 12.08; (2) the ALJ did not err in determining that plaintiff could perform past relevant work; and (3) the ALJ did not err in considering past drug and alcohol abuse.

## Recommendation

I recommend that plaintiff's Motion to Reverse and Remand the Administrative Agency Decision [7-1] be denied and that this cause of action be dismissed with prejudice.  Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C).

---

[9]  The new rule governs those cases which are "finally adjudicated by the Commissioner" after the effective date.  The majority of courts have interpreted "final adjudication" to refer to claims in which a final decision was made by the Appeals Council after March 29, 1996.  Because the Appeals Council denied Mr. Candelaria's request for review on March 11, 1997, the new amendments apply.

_____
UNITED STATES MAGISTRATE JUDGE